## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MARK W. DOBRONSKI**,
an individual,

Plaintiff,

v.

**1-800-LAW-FIRM, PLLC**,
a Michigan limited liability company,

Defendant.

Case: 2:24-cv-12512
Assigned To : McMillion, Brandy R.
Referral Judge: Altman, Kimberly G.
Assign. Date : 9/25/2024
Description: CMP-DOBRONSKI V
1-800-LAW-FIRM, PLLC (CMS)

---

## **COMPLAINT**

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and for his complaint against Defendant 1-800-Law-Firm, PLLC alleges:

Introduction

1.  This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*

Parties

2.  Plaintiff, MARK W. DOBRONSKI, is an individual, of the age of majority, a citizen of the United States of America, is domiciled and has a place of business in Orange County, Florida, has a residence and place of business in Washtenaw County, Michigan, and has a place of business in Wayne County, Michigan.

3. Defendant 1-800-LAW-FIRM, PLLC ("800LAW"), is a professional limited liability company organized and existing under the laws of the State of Michigan, with its principal office located at 26700 Lahser Road, Suite 310, Southfield, Michigan 48033-2617.

<u>Jurisdiction</u>

4. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331.

5. This Court has general personal jurisdiction over Defendant 800LAW, pursuant to M.C.L. § 600.711, as a result of its incorporation under the laws of this state, and the carrying on of a continuous and systematic part of its general business within the state.

<u>Venue</u>

6. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the tortious or illegal telephone calls complained of herein were received by Plaintiff in this judicial district.

<u>Preliminary Statement</u>

7. As the Supreme Court recently explained, "Americans passionately disagree amount many things. But they are largely united in their disdain for robocalls." *Barr v. American Association of Political Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

8.  The Federal Government receives a staggering number of complaints about robocalls – 3.7 million complaints in 2019 alone. *Id.*

9.  In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent persons, like Defendant, from invading American citizen's privacy and to prevent abusive "robo-calls" by enacting the TCPA.

10.  According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC."

11. In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the TCPA, explained, "computerized calls are the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year.  It is telephone terrorism, and it has got to stop...." See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

12.  According to YouMail, Inc., a company which tracks robocall activity and

publishes the YouMail Robocall Index, during calendar year 2022 alone, American consumers were bombarded with over 55.05 *billion* robocalls; an average of over 165 robocalls to each man, woman, and child. [Source: www.robocallindex.com ].

13. Nearly 1 in 3 Americans say they have fallen victim to a phone scam in the past year, with reported losses to phone scams exceeding $29.8 Billion. [Source: www.cndb.com/2021/06/29/americans-list-billions-of-dollars-to-phone-scams-over-the-past-year.html ].

14. Congress has found that interstate telemarketing fraud has become a problem of such magnitude that the resources of the Government are not sufficient to ensure adequate consumer protection from such fraud.

15. As a result, in enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

<u>Telephone Consumer Protection Act</u>

16. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse.* Congress found that these calls were not only a nuisance and invasion of privacy to consumers specifically, but were also a threat to interstate commence generally. *See* S. Rep. No. 102-178, at 2-3, 1991 U.S.C.C.A.N. 1968, 1969-71, 1991 WL 211220 (1991).

4

17.   The TCPA imposes restrictions on the use of automated telephone equipment.  47 U.S.C. § 227(b)(1).

18.  Pursuant to authority delegated by Congress to the FCC under the TCPA at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement the aforesaid restrictions on use of automated telephone equipment. The TCPA implementing regulations are promulgated at 47 C.F.R. § 64.1200(a), *et seq.*

19.   As part of the restrictions on use of automated telephone equipment, Congress created a private right of action for aggrieved persons to received $500.00 in damages for *each* violation of the subsection of the statute or the regulations prescribed thereunder, which amount the court may treble if the court finds that the defendant willfully or knowingly violated the statute or the regulations. 47 U.S.C. § 227(b)(3).

20.  Additionally, the Congress also sought to protect subscriber privacy rights, and directed the FCC to initiate a rulemaking proceeding to compare and evaluate alternative methods and procedures, and to develop proposed regulations to implement the methods and procedures that the FCC determines are most efficient to accomplish the need to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 C.F.R. § 227(c)(1).  The FCC conducted such a rulemaking and implemented regulations to protect telephone subscribers' privacy

rights. _See_ _In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991_, 68 FR 44144, 2003 WL 21713245 (FCC, 2003).

21.  As part of the protection of subscriber privacy rights, Congress created a private right of action for aggrieved persons to receive $500.00 in damages for _each_ violation of the subsection of the statute or the regulations prescribed thereunder, which amount the court may treble if the court finds that the defendant willfully or knowingly violated the statute or the regulations. 47 U.S.C. § 227(c)(5).

General Allegations

22.  Plaintiff's residential and cellular telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God.  Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, claiming that arrest warrants have been issued against Plaintiff for alleged drug trafficking and money laundering activities.

23.  Plaintiff's cellular telephone number is 734-***-9671.

24. Plaintiff's cellular telephone number 734-***-9671 is listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and has been so listed continuously since at least

December 9, 2004 and at all times subsequent thereto and relevant hereto.

25. Plaintiff uses his cellular telephone primarily for personal, family, and household communications, and not for business purposes.

26. By listing his cellular telephone number on the National Do Not Call Registry, Plaintiff has given constructive notice to the World, including each and every one of the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls at his cellular telephone number.

27. Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

28. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26, ¶ 73 (FCC, 2015).

29. Plaintiff is the subscriber to and a customary user of the called telephone line, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same. Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's robocall provisions.

See *Leyse v. Bank of America National Association*, 804 F.3d 316, 324 (3ʳᵈ Cir. 2015).

30.   The FCC has ruled that wireless subscribers who ask to be put on the national do-not-call list are presumed to be "residential subscribers." *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14039, 2003 WL 21517853, at *14, ¶ 36 (FCC, 2003).

31.   A text message to a cellular telephone qualifies as a "call" within the compass of the TCPA. *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 667, 577 U.S. 153, 156 (2016).

32.   At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendant.

33.   At no time has Plaintiff provided permission to the Defendant to engage in telephone solicitation with the Plaintiff via telephone.

34.   At no time has Plaintiff provided "prior express consent" or "prior express written consent" (as those terms are defined under the TCPA and as interpreted by the FCC) for any of the Defendant or anyone acting on behalf of the Defendant to initiate any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to Plaintiff's residential telephone number.

35.   At no time has Plaintiff had an "established business relationship" (as that

8

term is defined under the TCPA and as interpreted by the FCC) with the Defendant.

36.   The FCC has declared that a necessary element for a person to provide "consent" is that the person must knowingly and voluntarily provide the telephone number at which they are authorizing telemarketing calls to be received at.   For example, capturing a caller's telephone number by a Caller ID or ANI device cannot be considered consent to receive telemarketing calls. *In the Matter of Rules and Regulations Implementing the TCPA*, 7 FCC Rcd. 8752, 8769, 1992 WL 690928, at *11, ¶ 31 (FCC, 1992).

37.   Consent cannot be "presumed." The TCPA and the Commission's rules plainly require express consent, not implied or "presumed" consent. *In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 7991, 2015 WL 4387780, at *20, ¶ 52 (FCC, 2015).

38.   The TCPA clearly requires that consumers 'opt in' before they can be contacted.  *In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 8004, 2015 WL 4387780, at *29, ¶ 80 (FCC, 2015).

39.   The FCC has declared that "[p]urporting to obtain consent during the call... does not constitute the *prior* consent necessary to deliver the message in the first place as the request... is part of the telemarketing." *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14019, 2003 WL 21517853, at *49, ¶ 142 (FCC, 2003)

[Emphasis as in original].

40.  The TCPA places the burden on the caller to prove that it obtained the necessary prior express consent. *In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 7990, 2015 WL 4387780, at *18 (FCC, 2015).

41.  Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

42.  The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the TCPA*, 20 FCC Rcd. 13664, 13667, 2005 WL 1981564, at *3, ¶ 7 (FCC, 2005).

43.  A seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification. *In re Dish Network,* 28 FCC Rcd. 6574, 6584, 2013

WL 1934349, at *9, ¶ 28 (FCC, 2013).

44. Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. The agreement need not be expressed in words or may be implied and understood to exist from the conduct itself. Whenever two or more persons commit tortious acts in concert, each become subject to liability for the acts of the others, as well as for his own acts. In either case, the defendant's embrace of the actor's purpose or design—whether by agreement or by action—renders the defendant liable for the underlying tort.

45. The liability of coconspirators to civil damages is joint and several. All those who, in pursuance of a common plan to commit a tortious act actively take part in it and further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or who ratify and adopt the acts done for their benefit, are equally liable with him.

46. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

47. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including

11

emergency calls, when the telephone line was seized by Defendant's calls.

48.  For each and every call alleged herein initiated to Plaintiff's telephone line, Defendant caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

49.  Each and every call placed without consent by Defendant alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

50.  For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

<u>The Scheme</u>

51.  Defendant is engaged in soliciting consumers who have been injured to provide legal services to said consumers for legal claims regarding their purported

injuries.

52.  As part of its marketing program, Defendant utilizes text messaging as a cost effective method of reaching consumers *en masse* to make the consumers aware of Defendant's services.

53. Defendant either directly, or through contracted third-party telemarketers. initiate telephone calls *en masse* to cellular telephone numbers using automated telephone dialing systems, which have the capacity to store or produce telephone numbers to be called using a random or sequential number generator to dial such numbers, to solicit consumers to offer Defednant's legal services.   The autodialer uses the number generator to determine the order in which to pick phone numbers from a pre-produced list and store those numbers to be dialed at a later time.

54.  Defendant's involvement in the overall scheme includes directing, controlling, and participating at every step in the marketing scheme.   Further, Defendant ratifies the scheme by entering into representation agreements with the called consumers who have qualifying legal claims.

<u>The Calls</u>

55.  On June 25, 2023, at approximately 2:32 P.M., Defendant or Defendant's third-party agent initiated a text message to Plaintiff's cellular telephone number 734-***-9671.

13

56. The caller identification number displayed with the message was 734-210-0569.

57. A screen shot of the received message follows:



Sunday Jun 25 2:32PM

Hi carla. I'm Tyra, for 1-800-LAW-FIRM. Thanks for contacting us regarding a claim against faulty Philips CPAP Machines. Would you like to see if you qualify for a case at no cost?

Reply with:
"A" for Yes
"B" for Not interested
"C" for Stop & Unsubscribe

58. Immediately after receiving the aforesaid text message, Plaintiff dialed the caller identification number displayed (734-210-0569) to make a do not call demand, but received a recorded message stating: "Hi there. Thanks for calling Mass Tort Flex NG. It looks like they do not have inbound calling enabled. We'll notify them. Goodbye."

59. On June 28, 2023, at approximately 12:51 A.M., Defendant or Defendant's third-party agent initiated a text message to Plaintiff's cellular telephone number 734-***-9671.

60. The caller identification number displayed with the message was 734-210-

0569.

61.  A screen shot of the received message follows:



Wednesday Jun 28 12:51AM

Hi Carla, I'm Tyra, an AI assistant for 1-800-LAW-FIRM. Thanks for requesting information on PFAS. If you think that you or a loved one have been exposed to PFAS, you can schedule a no-obligation, free claim review by answering a couple of questions.

Would you like to learn more about qualifying for a claim?

Reply with:
"A" for Yes
"B" for Not Interested

View all                    >

62.  Immediately after receiving the aforesaid text message, Plaintiff dialed the caller identification number displayed (248-289-5560) to make a do not call demand, but received a recorded message stating: "Hi there.  Thanks for calling Mass Tort Flex NG.  It looks like they do not have inbound calling enabled.  We'll notify them. Goodbye."

63.   The aforesaid text messages expressly name 1-800-LAW-FIRM as the sender.

64.  Between June 25, 2023 and June 30, 2023, Plaintiff received over a dozen similar text messages soliciting Plaintiff's interest in various mass tort litigation and tax debt settlement matters, but which are not clear as to identity of the sender, but

which appear to be somehow related to Defendant, as the messages all are in similar format and more than one of the messages had the same caller identification numbers as utilized in the 2 text messages, *supra*. Defendant's relationship to the additional text messages will be better ascertained during the course of fact discovery in this action.

65. All of the text messages appear to have been sent utilizing an automated telephone dialing system because of the generic and impersonal nature of the text messages and the use of a reply link in each message. Further, the use of an automatic telephone dialing system is also evident based upon the frequency with which Plaintiff received such messages over a one week period.

## FIRST CAUSE OF ACTION
### VIOLATION OF THE TCPA - AUTODIALER CALL

66. Plaintiff incorporates the allegations of paragraphs 1 through 72, *supra*.

67. Each of text message sent by Defendant or Defendant's third-party agent to Plaintiff's cellular telephone were in violation of the TCPA, specifically 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)(iii), as Defendant initiated or caused to be initiated a telephone call to a telephone number assigned to a cellular telephone service, without the prior express consent of the called party and there being no emergency purpose, using an automatic telephone dialing system.

68. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by repetitive number of calls.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE TCPA - DO NOT CALL

69. Plaintiff incorporates the allegations of paragraphs 1 through 82, *supra*.

70. Each of text message sent by Defendant or Defendant's third-party agent to Plaintiff's cellular telephone were in violation of the TCPA, specifically 47 C.F.R. § 64.1200(c)(2), as Defendant or Defendant's third-party agent initiated or caused to be initiated a telephone solicitation to a residential telephone subscriber who has registered his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations.

71. The aforesaid violation of the TCPA was willful and/or knowing.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff Dobronski and against the Defendant 800LAW, as follows:

A. Damages in the amount of $500.00 for each violation of each subsection of the TCPA or the regulations prescribed under such subsection.

B. Treble damages because the violations were knowing and/or willful.

C. An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

D. An injunction enjoining Defendant from initiating any telephone calls to

17

Plaintiff's residential telephone and cellular telephone lines.

E.     Interest accruing from the date of filing until paid at the statutory rate; and,

F.     Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: September 23, 2024

_____
Mark W. Dobronski
Post Office Box 99
Dexter, Michigan 48130-0099
Telephone: (734) 641-2300
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
MARK W. DOBRONSKI

(b) County of Residence of First Listed Plaintiff  Orange, FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
PRO SE

## DEFENDANTS
1-800-LAW-FIRM, PLLC

County of Residence of First Listed Defendant  Oakland, MI
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [X] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & / [ ] 367 Health Care/ | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | Slander / Pharmaceutical Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' / Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability / [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 340 Marine / Injury Product | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| | [ ] 345 Marine Product Liability / Liability | | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / **PERSONAL PROPERTY** | **LABOR** | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle / [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 190 Other Contract | Product Liability / [ ] 371 Truth in Lending | | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal / [ ] 380 Other Personal | [ ] 720 Labor/Management Relations | [ ] 862 Black Lung (923) | |
| [ ] 196 Franchise | Injury / Property Damage | [ ] 740 Railway Labor Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| | [ ] 362 Personal Injury - / [ ] 385 Property Damage | [ ] 751 Family and Medical | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| | Medical Malpractice / Product Liability | Leave Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | | [ ] 895 Freedom of Information Act |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 240 Torts to Land | [ ] 443 Housing/ / [ ] 530 General | | | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | Accommodations / [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - / **Other:** | [ ] 462 Naturalization Application | | |
| | Employment / [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | [ ] 446 Amer. w/Disabilities - / [ ] 550 Civil Rights | | | |
| | Other / [ ] 555 Prison Condition | | | |
| | [ ] 448 Education / [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 U.S.C. 227
Brief description of cause:
Illegal text messages

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  [ ] Yes  [X] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*:
JUDGE _____  DOCKET NUMBER _____

DATE
September 23, 2024

SIGNATURE OF ATTORNEY OF RECORD
*Mark W. Dobronski*

## FOR OFFICE USE ONLY
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

PURSUANT TO LOCAL RULE 83.11

1.　　　　Is this a case that has been previously dismissed?　　　　☐ Yes
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　■ No

　　If yes, give the following information:

　　Court: _____

　　Case No.: _____

　　Judge: _____

2.　　　　Other than stated above, are there any pending or previously
　　　　　discontinued or dismissed companion cases in this or any other　　☐ Yes
　　　　　court, including state court? (Companion cases are matters in which　　■ No
　　　　　it appears substantially similar evidence will be offered or the same
　　　　　or related parties are present and the cases arise out of the same
　　　　　transaction or occurrence.)

　　If yes, give the following information:

　　Court: _____

　　Case No.: _____

　　Judge: _____

Notes :

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments.

FLAT RATE ENVELOPE
POSTAGE REQUIRED

PRESS FIRMLY TO SEAL

S FIRMLY TO SEAL

FROM:

MARK W DOBRONSKI
PO BOX 99
DEXTER, MI 48130-0099

U.S. MARSHALS

TO:

UNITED STATES DISTRICT COURT
ATTN: CLERK'S OFFICE
231 W LAFAYETTE BLVD FL 5
DETROIT, MI 48226-2700

Retail

US POSTAGE PAID

**$9.85**

Origin: 48130
09/23/24
2525100130-4

**PRIORITY MAIL®**

0 Lb 6.10 Oz

RDC 03

C052

EXPECTED DELIVERY DAY: 09/25/24

SHIP
TO:
231 W LAFAYETTE BLVD
DETROIT MI 48226-2700

USPS TRACKING® #

9505 5123 0462 4287 3201 34

UNITED STATES
POSTAL SERVICE

how2recycle.info