UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK W. DOBRONSKI,

       Plaintiff,                    Case No. 2:24-cv-12512
                                   District Judge Brandy R. McMillion
v.                              Magistrate Judge Kimberly G. Altman

1-800-LAW-FIRM, PLLC,

       Defendant.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S PENDING MOTIONS (ECF NOS. 13, 14, 15, 16)[1]

I.      Introduction

This is a consumer rights case under the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227 *et seq.* Plaintiff Mark W. Dobronski, proceeding *pro se*, is suing 1-800-LAW-FIRM, PLLC (LAWFIRM) for unauthorized text messages allegedly sent to him by LAWFIRM in violation of the TCPA. On October 22, 2024, LAWFIRM appeared by counsel and answered the complaint (ECF No. 7), and on October 23, 2024, the case was referred to the

_____

[1] Upon review of the motions, the undersigned deems these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1). Additionally, the undersigned notified the parties that the motions would be determined without a hearing. (ECF No. 19).

undersigned for all pretrial proceedings.  (ECF No. 8).  Before the Court are

several motions filed by LAWFIRM, as follows:

- Motion to Dismiss under Rule 12(c) and Rule 56 (ECF No. 13)

- Motion to Stay Discovery Pending Motion to Dismiss (ECF No. 14)

- Motion for Attorney Fees (ECF No. 15)

- Motion for Sanctions (ECF No. 16).

The motions are fully briefed (ECF Nos. 13, 14, 15, 16, 17, 18, 20, 22, 21,

23, 24, 25) and ready for consideration.  For the reasons that follow, the

undersigned RECOMMENDS that the motions be DENIED.

## II.    Background

### A.    The Complaint

The following allegations are taken from the complaint, which must be

assumed true on a motion to dismiss.  *CompuServe, Inc. v. Patterson*, 89 F.3d

1257, 1262 (6th Cir. 1996).

On September 24, 2024, Dobronski filed a complaint against LAWFIRM in

which he alleges that starting in June 2023, he received a series of uninvited SMS

text messages and telephone solicitation calls to his cellular telephone number 734-

***- 9671.  (ECF No. 1, PageID.14-16).  Two of the SMS text messages were

addressed to "Carla" and were seeking interest in qualifying for mass tort litigation

claims involving faulty Philips continuous positive air pressure (CPAP) machines,

2

and polyfluoroalkyl substances (PFAS).  (*Id.*, PageID.14-15).  These SMS text messages also identified LAWFIRM as the sender.  (*Id.*).  Then, during the final week of June 2023, Dobronski alleges that he received over a dozen similar SMS text messages, as well as several telephone calls, ostensibly seeking "Carla" and soliciting interest in various mass tort litigation and tax debt settlement matters that were not clear as to the identity of the sender.  (*Id.*, PageID.16).  The complaint further alleges that the SMS text messages and telephone solicitations appear be somehow related to LAWFIRM, as the SMS text messages are all in similar format and more than one of the messages had the same caller identification numbers as the two earlier messages.  In addition, several telephone solicitations asked for "Carla" and sought interest in various mass tort litigation claim matters, but the callers would hang-up when Dobronski asked them to identify themselves.  (*Id.*)

### B.    Procedural History

On September 25, 2024, Dobronski filed the complaint.  (ECF No. 1). LAWFIRM was served with the summons and complaint on October 1, 2024. (ECF No. 6).  On October 21, 2024, LAWFIRM filed an answer to the complaint. (ECF No. 7).  On October 25, 2024, a scheduling order was entered and discovery commenced, with a deadline of February 25, 2025.  (ECF No. 9).

On October 26, 2024, Dobronski served LAWFIRM with a First Set of Interrogatories, a First Requests for Production of Documents, and a First Requests

for Admissions.  (ECF No. 17, PageID.126-131, 133-139, 141-145).  On November 26, 2024, LAWFIRM served Dobronski with responses and objections to the First Set of Interrogatories and the First Requests for Production of Documents.

On December 2, 2024, Dobronski served LAWFIRM with a Second Set of Interrogatories, Second Requests for Production of Documents, and Second Requests for Admissions.  (ECF No. 17, PageID.147-152, 154-158, 160-162).

On February 5, 2025, the Court held a telephone conference with the parties because Dobronski said that LAWFIRM had not responded to his second set of discovery.  The Court directed LAWFIRM to respond to the discovery requests in 30 days, or by March 5, 2025, and entered an amended scheduling order, extending the deadlines for discovery to May 27, 2025, and dispositive motions to June 27, 2025.  (ECF No. 12).

Instead of responding to the discovery requests, on March 10, 2025 – five days after the Court's March 5, 2025 deadline, and more than 68 days after the original January 2, 2025 response deadline – LAWFIRM filed the four instant motions.

### III.   Seeking Concurrence

Before addressing the merits of the motions, the undersigned will address Dobronski's assertion that LAWFIRM failed to properly seek concurrence before

4

it filed the motions as required under Eastern District of Michigan Local Rule 7.1(a). He argues that their motions should be stricken or denied on this basis. LAWFIRM denies that it failed to seek concurrence.

There is some authority supporting the argument that motions made without certifying that concurrence has been sought *must* be denied. *See United States v. Ramesh*, No. 02-80756, 2009 WL 817549, at *6 (E.D. Mich. Mar. 26, 2009) ("Seeking concurrence from the opponent is a mandatory directive of the Local Rules of this District. Inasmuch as [the defendant] has failed to comply with this Local Rule prior to filing this motion, the Court must deny the relief that he seeks to obtain."). Afterall, the Local Rules are called "rules," and not "suggestions" or "guidelines[.]" *Bryce v. Comm'r of Soc. Sec.*, No. 12-14618, 2013 WL 12123666, at *1 (E.D. Mich. Oct. 8, 2013).

However, "district courts in this jurisdiction have routinely waived these requirements when it is obvious that the opposing party would not have concurred in the requested relief." *Plastic Omnium Auto Inergy Indus. SA de CV v. MCC Dev., Inc.*, No. 21-CV-11141, 2022 WL 883024, at *3 (E.D. Mich. Mar. 24, 2022) (quoting *In re Kulek*, No. 18-11509, 2019 WL 168540, at *4 (E.D. Mich. Jan. 11, 2019)). It has also been recognized that Local Rule 7.1(a) was "designed to streamline litigation, reduce unnecessary costs, and narrow issues." *Summer v. Detroit Pub. Sch. Cmty. Dist.*, No. 21-12936, 2023 WL 8455031, at *2 (E.D. Mich.

Dec. 6, 2023) (quoting *All About Chores LLC v. Lyon*, No. 18-CV-12000, 2019
WL 2590750, at *1 (E.D. Mich. June 25, 2019)).  Denying motions will not serve
these interests where "[the p]laintiff has not argued [he] would have given the
requested concurrence or has been prejudiced by [the d]efendants' failure to follow
the rule in any way."  *Id.* (citing *Jarvis v. Cooper*, No. 12-CV-11804, 2013 WL
1289272, at *9 (E.D. Mich. Mar. 28, 2013) and *Tuttle v. Land*, No. 10-11221, 2010
WL 2232210, at *4 (E.D. Mich. May 27, 2010)).  As explained in *Summer*, "[t]he
court seeks, to the furthest extent possible, to decide [d]efendants' motions on the
merits, rather than denying them based on a technicality."  2023 WL 8455031, at
*2.

Here, the parties dispute whether LAWFIRM sought concurrence before
filing the motions.  Although counsel for LAWFIRM certified that concurrence
was sought, Dobronski filed an affidavit attesting that it was not.  Rather than head
down this sidetrack, the undersigned does not recommend that any motions be
struck or denied based on a violation of Local Rule 7.1(a).  However, both sides
are reminded that all filings must comply with Local Rule 7.1(a) regarding
concurrence and if either party fails to comply in the future, their filings may be
stricken.

IV.    Motion for Judgment on the Pleadings and Summary Judgment

A.    Legal Standards

6

LAWFIRM has moved to dismiss under Rule 12(c) and for summary judgment under Rule 56.

### 1.    Judgment on the Pleadings

Motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) are analyzed under the same standard as motions to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011).  When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or for judgment on the pleadings under Rule 12(c), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012); *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  "The

7

plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

### 2. Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d

8

446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Dobronski is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

## B.    Discussion

LAWFIRM's five-page motion weaves back and forth between defenses that require evidence under the summary judgment standard and defenses that appear to challenge the complaint on its face under Rule 12(c). As best can be determined, LAWFIRM argues that (1) Dobronski expressly or impliedly consented to text messages from LAWFIRM, (2) Dobronski's inquiries constituted an established business relationship (EBR) between Dobronski and LAWFIRM, (3) National Do Not Call Registry regulations do not apply to LAWFIRM, and (4) Dobronski's

conduct during discovery is abusive and warrants dismissal.[2]  The undersigned will address these arguments in turn.

### 1.     Express or Implied Consent

Dobronski alleges that on June 25, 2023, at approximately 2:32 P.M., his personal cell phone received a text purporting to be from a representative of LAWFIRM addressed to "Carla" which stated: "Thanks for contacting us regarding a claim against faulty Phillips CPAP Machines.  Would you like to see if you qualify for a case at no cost?"  (ECF No. 1, PageID.13-14).  The text contained instructions to reply indicating either "Yes," "No," or "Stop & Unsubscribe."  (*Id.*).  Dobronski did not respond via text, but called the number after receiving the text

---

[2] LAWFIRM also attempts to discredit Dobronski based on his background and potential motivation for bringing suit.  (ECF No. 25, PageID.265-328). LAWFIRM takes issue with Dobronski's level of sophistication, his allegedly business-like and profit-seeking motives, his prior misconduct and public censure as a Justice of the Peace in Arizona, and the number of TCPA cases he has filed. (*Id.*, PageID.265-266).  Dobronski's practices do not affect his standing to sue under the TCPA, nor do they save LAWFIRM from his claims.  *See, e.g., Fitzhenry v. ADT Corp.*, No. 14-80180, 2014 WL 6663379, at *5 (S.D. Fla. Nov. 3, 2014) (the plaintiff pursued TCPA claims to bring in more income and had several different home phone numbers to receive a higher volume of telemarketing calls); *Jawk Enters. v. Greenlight Energy, Inc.*, No. 19-CV-4212-ARR-SJB, 2019 WL 5881752, at *2 (E.D.N.Y. Nov. 5, 2019) (the plaintiff had filed multiple TCPA lawsuits, had a profit motive in doing so, and was a "professional" litigant). "Nothing in the Constitution…requires a plaintiff to be a naïf.  Litigation is not college athletics: there is no 'amateurs only' rule." *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017). Nor has LAWFIRM cited any authority for why Dobronski's alleged misconduct over twenty years ago should have any impact on this case.  In sum, these details about Dobronski have no bearing on any of the motions before the Court.

message to make a do not call demand.  (*Id.*).  He was met with a recorded message by "Mass Tort Flex NG" stating that the recipient did not have inbound calling enabled.  (*Id.*).  Dobronski later received over a dozen similar text messages purporting to be from LAWFIRM, to which he did not respond.  (*Id.*, PageID.15-16).

The complaint further states that Dobronski did not authorize or give permission to LAWFIRM to contact him via text and at no time consented to such contact.  (*Id.*, PageID.8).  Dobronski has sworn by an affidavit attached to his response to LAWFIRM's motion that the allegations of the complaint are true to his knowledge or, where stated as such, believed to be true, and that he never submitted an inquiry for legal assistance under the name Carla Heeringa or otherwise provided consent under another name for LAWFIRM to contact him. (ECF No. 22, PageID.239-240).

The Sixth Circuit has summarized liability under the TCPA as follows:

The TCPA prohibits a person from: (1) initiating any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party; or (2) making live calls to residential telephone numbers that have been placed on the national do-not-call registry. . . .

In [*In re Dish Network*, 28 F.C.C. Rcd. 6574 (2013)], the FCC clarified that a "telemarketer" is "the person or entity that initiates a [telemarketing] call," i.e., "takes the steps necessary to physically place a telephone call, and generally does not include persons or entities . . . that might merely have some role, however minor, in the causal chain that results in the making of a telephone call."  28 FCC Rcd. at 6583, ¶

26, 27.; *see also IMHOFF* [*Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 635 (6th Cir. 2015)]. However, the FCC concluded that inclusion of the phrase "on behalf of" in § 227(c)(5), which creates a private right of action to challenge multiple live calls, allowed for a "seller" to be held vicariously liable under traditional agency tenets, including "not only formal agency, but also principles of apparent authority and ratification." *Dish Network*, 28 FCC Rcd. at 6584, ¶ 28.

*Lucas v. Telemarketer Calling from (407) 476-5680*, No. 18-3633, 2019 WL 3021233, at *5 (6th Cir. May 29, 2019).

Based on the above, Dobronski has stated a claim against LAWFIRM for a violation of the TCPA on the face of the complaint. Several courts have found that similar allegations sufficient to allege plausible claims under the TCPA, even where a third-party vendor was utilized to make calls. *See, e.g., Dobronski v. SunPath Ltd.*, No. 19-13094, 2020 WL 8840311 (E.D. Mich. July 27, 2020); *Dobronski v. Total Ins. Brokers, LLC*, No. 21-10035, 2021 WL 4452218, at *4 (E.D. Mich. Sept. 29, 2021); *Litz v. My Car Warrior, LLC*, No. 12-CV-00377, 2020 WL 3546129 (S.D. Ind. June 30, 2020); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 662 (4th Cir. 2019); *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 363 (E.D. Pa. 2019); *Hossfeld v. Gov't Employees Ins. Co.*, 88 F. Supp.3d 504, 510 (D. Md. 2015). Additionally, text message communications are covered as "calls" under the TCPA. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015).

Applying the summary judgment standard, LAWFIRM accuses Dobronski

of "deliberate misconduct" for waiting over a year to file his lawsuit, "knowing that industry practice limits third-party vendors' retention of SMS (Short Message Service) data to one year" and "effectively ensuring that [LAWFIRM] would be unable to access records to defend itself." (ECF No. 13, PageID.52). This argument has no basis in law, as LAWFIRM does not challenge that Dobronski has filed within the relevant statute of limitations and does not control LAWFIRM or its vendor's data retention policies.

LAWFIRM also asserts that Dobronski initiated the first contact and thereby provided consent to LAWFIRM's communications, citing its discovery response that "an end user filled out a form via a third party publisher that was associated with 1-800- LAW-FIRM," was "captured using the service," and "entered a name and phone number and further consented to being contacted by our firm." (ECF No. 13, PageID.59). According to LAWFIRM, Dobronski initiated this "lead event" on June 25, 2023 at 1:45 P.M. (*Id.*, PageID.60).

Dobronski responds that LAWFIRM's interrogatory response was not submitted under oath and therefore should not be considered as evidence on LAWFIRM's motion for summary judgment. *See* Fed. R. Civ. P. 33(b)(3). Even if it was, he contends, it would establish nothing more than a genuine issue of material fact, given that Dobronski has sworn that he did not initiate or consent to communications from LAWFIRM. Further, Dobronski notes that LAWFIRM did

not timely respond to his second requests for admissions, thereby admitting that LAWFIRM "[a]t no time . . . had "prior express consent" or "prior express written consent" to text Dobronski and that Dobronski was not listed on LAWFIRM's TCPA compliance report as an individual that has provided consent for communications. *See* Fed. R. Civ. P. 36(b)(3) (unanswered requests to admit are deemed admitted).

At this stage and based on the record as it stands, Dobronski is correct that there is a genuine issue of material fact as to consent.  If LAWFIRM is correct that Dobronski initiated LAWFIRM's text communications via an online form, Dobronski's claims may fail.  *See Dobronski v. Fam. First Life, LLC*, No. 22-CV-12039, 2024 WL 1342668, at *4 (E.D. Mich. Mar. 29, 2024) (citing *Dobronski v. Total Ins. Brokers, LLC*, No. 21-10035, 2021 WL 4452218, at *4 (E.D. Mich. Sept. 29, 2021)).  But there is currently no concrete evidence before the Court that Dobronski solicited LAWFIRM's messages, and Dobronski attests that he has not.

LAWFIRM also faults Dobronski for failing to opt out of its text messages, but provides no legal support for the theory that containing an opt-out option averts liability.  As Dobronski notes, "the TCPA places no affirmative obligation on a called party to opt out of calls to which he or she never consented; the TCPA places responsibility on the caller alone to ensure that he or she has valid consent for each call made[.]"  *In the Matter of Rules & Reguls. Implementing the Tel.*

14

*Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015).  According to

Dobronski, he "has never consented and therefore has nothing from which to opt

out." *Id.*

Based on the above, Dobronski has stated a valid TCPA claim that should

survive based on the genuine issue of fact regarding whether he received

unsolicited text messages from LAWFIRM in violation of the act.

2.      Established Business Relationship

LAWFIRM next argues that Dobronski's claims fail based on the

undersigned's report and recommendation in *Dobronski v. Fam. First Life, LLC*,

No. 2:22-CV-12039, 2024 WL 575858 (E.D. Mich. Jan. 19, 2024), *report and*

*recommendation adopted in relevant part*, 2024 WL 1342668 (E.D. Mich. Mar. 29,

2024), because "Plaintiff's inquiries likely constituted an Established Business

Relationship (EBR) exception under the Do Not Call (DNC) regulations."  (ECF

No. 13, PageID.53).  In *Family First*, the undersigned explained,

> Courts have found that an established business relationship exists
> where a call recipient feigns interest in a product in order to identify a
> caller. *See Charvat v. Southard Corp.*, No. 2:18-CV-190, 2019 WL
> 13128407, at *4 (S.D. Ohio Sept. 30, 2019) ("It may be true that
> Plaintiff has trouble discerning the identity of telemarketers in order to
> bring lawsuits against them unless he feigns interest in their services,
> but this does not make an otherwise voluntary conversation
> involuntary."); *Hamilton v. Spurling*, No. 3:11CV00102, 2013 WL
> 1164336, at *10 (S.D. Ohio Mar. 20, 2013) ("Setting up the
> appointment constitutes an 'inquiry' or 'application' regarding
> chiropractic services offered at Chiropractic Therapy West. Thereafter,
> ... [the plaintiff's] second, third, and fourth calls following up regarding

15

the missed appointment do not meet the definition of a 'telephone solicitation' under the TCPA Regulations."); *Morris v. Copart*, No. 4:15-CV-724, 2016 WL 6608874, at *9 (E.D. Tex. Nov. 9, 2016) (stating that "the [p]laintiff's false affirmation that he had a vehicle to donate established a business relationship, excusing subsequent calls made in furtherance of that business relationship and for the stated purpose of that relationship—to effectuate [the p]laintiff's donation of a car.").

*Dobronski*, 2024 WL 575858 at *9.

In *Family First*, the undersigned found (and the district judge agreed) that any "follow-up calls" placed by defendants after Dobronski feigned interest in their products were part of an EBR, and thus, Dobronski did not have standing to pursue claims based on those calls. But more importantly, the undersigned found that Dobronski *did* have standing to pursue claims based on the initial calls from defendants in that case, because he had properly pled that an EBR was not established until after those calls were made to him. *Id.* at *9-10.

Here, as explained above, Dobronski has pled that he did not initiate contact with LAWFIRM, but received repeated unsolicited texts in violation of the TCPA. As for evidence, there is a genuine issue of fact whether the texts were solicited or unsolicited. Therefore, LAWFIRM is not entitled to dismissal or summary judgment on this ground.

### 3.    The National Do Not Call Registry

LAWFIRM next argues that the National Do Not Call Registry "applies solely to unsolicited telemarketing calls made to registered phone numbers" and

16

"does not apply where the individual initiates the interaction[.]"  (ECF No. 13,

PageID.53).  As discussed above, this fact issue remains in plausible dispute, and

Dobronski has properly pled that he did not initiate the interaction.  Further,

LAWFIRM says that it "is not a telemarketing company and, therefore, is not

subject to DNC regulations."  (*Id.*, PageID.54).  However, as Dobronski notes, the

relevant TCPA regulation provides that

> No person or entity shall initiate any telephone solicitation to:
>
>> (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

47 C.F.R. § 64.1200(c).

Furthermore, 47 C.F.R. § 64.1200(f)(15) defines a "telephone solicitation"

as "the initiation of a telephone call or message for the purpose of encouraging the

purchase or rental of, or investment in, property, goods, or services, which is

transmitted to any person[.]"  The relevant exceptions to this—a solicitation with

prior express invitation or permission, or to a person with whom the caller has an

EBR—do not apply here.  As discussed above, Dobronski has properly pled TCPA

violations under these regulations, and a genuine issue of fact exists as to whether

LAWFIRM is liable for such violations.

LAWFIRM also notes that "the Federal Trade Commission ("FTC")

expressly permits calls made for political, charitable, debt collection,

17

informational, and survey purposes—even to numbers registered on the DNC list"
and argues that Dobronski "has failed to provide any evidence that his number was
registered on the DNC Registry at the time of the interaction." (*Id.*).  On the first
point, LAWFIRM makes no showing that its text messages were made for any of
those permitted purposes, and on the second, LAWFIRM misses the mark as to
Dobronski's burden.  Dobronski has alleged, and sworn, that his number is on the
National Do Not Call Registry.  LAWFIRM has provided no evidence that his
number is not.  Therefore, Dobronski's claims should survive summary judgment
and judgment on the pleadings.

### 4.      Abuse of Process Warranting Dismissal

Lastly, LAWFIRM argues that Dobronski "has demonstrated a pattern of
using discovery as a means to identify additional businesses to sue, rather than to
advance legitimate claims" based on Dobronski's subpoenas to LAWFIRM's
vendors for information allegedly unrelated to this litigation. (*Id.*).  LAWFIRM
also refers to Dobronski's alleged "disciplinary history in Arizona," although that
appears to be unrelated to discovery or Dobronski's history as a TCPA litigant.
(*Id.*).  LAWFIRM provides no legal authority for the harsh sanction of dismissal
based on what it regards as an "abuse of process." (*Id.*).

The Court's inherent authority "includes the ability to fashion an appropriate
sanction for conduct which abuses the judicial process." *Blackwell v. Simon*, No.

18

1:18-CV-1261, 2020 WL 5351022, at *7 (W.D. Mich. Mar. 20, 2020) (quoting

*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 102 (2017)), *report and*

*recommendation adopted*, 2020 WL 2553146 (W.D. Mich. May 20, 2020).  Here,

there is no indication that any sanction is appropriate, as will be further explained

below.  To the extent that Dobronski's discovery requests have been presented to

the Court, his requests do not appear to be beyond the scope of the case, even if the

information he receives may indicate other parties that Dobronski believes are

liable for TCPA violations.  Therefore, the undersigned does not recommend that

any sanction, including dismissal, be assessed at this time.

Overall, LAWFIRM's motion for judgment on the pleadings or for summary

judgment should be denied.

### IV.    LAWFIRM's Other Motions

In addition to its dispositive motion, LAWFIRM has moved to stay

discovery pending resolution of its motion to dismiss; for attorney's fees and costs

under 28 U.S.C. § 1927; and for sanctions under Rule 11 and the Court's inherent

authority.  For the reasons that follow, the undersigned recommends denial of each

motion.

### A.    Motion to Stay

#### 1.    Legal Standard

A stay of discovery is a matter well within the discretion of the trial court.

19

*Chrysler Corp. v. Fedders Corp*., 643 F.2d 1229, 1240 (6th Cir. 1981).  "In ruling

upon a motion for stay, the Court is required to weigh the burden of proceeding

with discovery upon the party from whom discovery is sought against the hardship

which would be worked by a denial of discovery."  *Williamson v. Recovery Ltd.*

*P'ship*, No. 2:06-CV-0292, 2010 WL 546349, at *1 (S.D. Ohio Feb. 10, 2010)

(citing *Marrese v. American Academy of Orthopaedic Surgeons*, 706 F.2d 1488,

1493 (7th Cir. 1983)). The burden upon the party requesting the stay is less

cumbersome when a stay—as opposed to a complete prohibition—of discovery is

sought.  *Marrese*, 706 F.2d at 1493.

      Generally, however, the mere filing of a dispositive motion, such a motion

for judgment on the pleadings or motion to dismiss, is insufficient to support a stay

of discovery.  *See, e.g., Boddie v. PNC Bank, NA*, No. 2:12-CV-158, 2012 WL

4088683, at *4 (S.D. Ohio Sept. 17, 2012) ("However, one argument that is usually

deemed insufficient to support a stay of discovery is that a party intends to file, or

has already filed, a motion to dismiss for failure to state a claim under Rule

12(b)(6) or other dispositive motion."); *Williamson*, 2010 WL 546349, at *2

("[U]nless the motion raises an issue such as immunity from suit, which would be

substantially vitiated absent a stay, or unless it is patent that the case lacks merit

and will almost certainly be dismissed, a stay should not ordinarily be granted to a

party who has filed a garden-variety Rule 12(b)(6) motion."); *Wilson v.*

*McDonald's Corp.*, No. 14-11082, 2015 WL 13047572, at *3 (E.D. Mich. Apr. 28, 2015) ("Generally, the filing of a dispositive motion is insufficient to warrant a stay of discovery."); *Williams v. New Day Farms, LLC*, No. 2:10-CV-0394, 2010 WL 3522397, at *1 (S.D. Ohio Sept. 7, 2010) ("[O]ne argument that is usually deemed insufficient to support a stay of discovery is that a party intends to file, or has already filed, a motion to dismiss for failure to state a claim under Rule 12(b)(6).").

2.      Discussion

Here, LAWFIRM argues, in essence, that discovery should be stayed simply because it has filed a dispositive motion.  However, the undersigned has now recommended that the dispositive motion be denied, and the motion to stay does not otherwise present a clear, discrete issue such as immunity from suit or the running of statute of limitations that can be easily decided in LAWFIRM'S favor.

Therefore, the Court finds that the interest of Dobronski in prosecuting his case outweighs the burden on LAWFIRM to engage in discovery, especially in light of the fact that this case does not present overly complex legal issues or facts. As such, based on the circumstances of this case, the undersigned recommends that LAWFIRM's motion to stay discovery be denied.  *See, e.g., DiYanni v. Walnut Twp. Bd. of Educ.*, No. 2:06-CV-0151, 2006 WL 2861018, at *3 (S.D. Ohio Oct. 4, 2006) (denying motion to stay discovery pending ruling on motion for judgment on

21

the pleadings).

### B.    Motion for Rule 11 Sanctions

### 1.    Legal Standard

A court may impose sanctions when the court determines that the requirements of Rule 11(b) have been violated. Rule 11(b) provides:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>>
>> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>>
>> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>>
>> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  Rule 11 requires attorneys to refrain from pursuing meritless claims.  *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609,

22

627 (6th Cir. 2010).  A court may impose sanctions if "a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay."  *Id*. (*quoting Herron v. Jupiter Transp. Co*., 858 F.2d 332, 335 (6th Cir. 1988)).  However, making the foregoing "determinations is difficult when there is nothing before the court except the challenged complaint."  *Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003).

The test for determining whether to impose "sanctions is whether [an] individual's conduct was reasonable under the circumstances."  *Tropf v. Fidelity Nat'l Title Ins. Co*., 289 F.3d 929, 939 (6th Cir. 2002) (quoting *Union Planters Bank v. L & J Development Co., Inc*., 115 F.3d 378, 384 (6th Cir. 1997)).  Reasonableness should be assessed under an objective standard.  *See Mann v. G & G Mfg., Inc*., 900 F.2d 953, 958 (6th Cir. 1990).  Courts should test the reasonableness of conduct by determining "what was reasonable to believe at the time the pleading, motion, or other paper was submitted[,]" and should avoid using the "wisdom of hindsight" in their determinations.  *Merritt*, 613 F.3d at 626.

Further, in general, a court should "be hesitant" to determine that a complaint violates Rule 11(b) when a suit is dismissed at the motion to dismiss stage.  *Tahfs*, 316 F.3d at 594.  Yet, a court may proceed with less hesitation when

a party moves for sanctions after discovery is complete and there is a motion for

summary judgment before the court.  *Id*.  Although courts should be watchful of

complaints that assert baseless allegations, "Rule 11 is not intended to chill an

attorney's enthusiasm or creativity in pursuing factual or legal theories."  *Id*. at 595

(quoting *McGhee v. Sanilac Cnty*., 934 F.2d 89, 92 (6th Cir. 1991)).  The test for

imposing Rule 11 sanctions is whether the individual's conduct was "reasonable

under the circumstances."  Fed. R. Civ. P. 11(b); *see Tropf v. Fidelity Nat'l. Title

Ins. Co*., 289 F.3d 929, 939 (6th Cir. 2002).

### 2.    Discussion

As an initial matter, Dobronski says that the motion should be denied

because LAWFIRM did not comply with the Rule 11 safe harbor provision, which

provides:

> (2) Motion for Sanctions. A motion for sanctions must be made
> separately from any other motion and must describe the specific
> conduct that allegedly violates Rule 11(b). The motion must be served
> under Rule 5, but it must not be filed or be presented to the court if the
> challenged paper, claim, defense, contention, or denial is withdrawn or
> appropriately corrected within 21 days after service or within another
> time the court sets. If warranted, the court may award to the prevailing
> party the reasonable expenses, including attorney's fees, incurred for
> the motion.

Fed. R. Civ. P. 11(c).

Dobronski says LAWFIRM failed to comply by not serving him with the

motion twenty-one days before filing it.  (ECF No. 18, PageID.174).  LAWFIRM

says in reply that it "did provide Plaintiff with adequate notice of the Motion for Sanctions before filing" and that "Plaintiff fails to produce any evidence that Defendant did not comply with procedural requirements."  (ECF No. 21, PageID.213).  LAWFIRM, however, is the only party in a position to prove that it did comply with the safe harbor provision by submitting a certificate of service to the Court, which it has not done.  Thus, LAWFIRM's motion could be denied on this ground.  However, the undersigned does not recommend that the motion be denied on this ground because, as explained below, the motion also lacks substantive merit.

As to the merits, LAWFIRM asserts that sanctions are warranted because "[p]ublicly available records demonstrate that Plaintiff Mark Dobronski has a pattern of filing meritless lawsuits against various entities, using litigation as a means to extract settlements or harass defendants.  Courts have repeatedly rejected his claims as legally deficient."  (ECF No. 16, PageID.107).

However, as Dobronski points out in response, LAWFIRM has not furnished the "publicly available records," or cited to a single "meritless lawsuit" involving Dobronski.  It is true that Dobronski is a prolific litigator in this district, filing several cases claiming violations of the TCPA and state law.  However, the fact that Dobronski has filed multiple lawsuits does not in and of itself merit sanctions.

25

LAWFIRM also says that "[i]n the present case, Plaintiff asserts claims unsupported by evidence or legal precedent,"  (ECF No. 16, PageID.107).  It appears that LAWFIRM relies on its arguments in support of its dispositive motion to justify seeking sanctions.  This approach fails.  As explained above, the undersigned has recommended that LAWFIRM's dispositive motion be denied.  Implicit in this recommendation is the finding that Dobronski's complaint is neither factually nor legally baseless.  Even if it were, the authority cited above notes that sanctions are generally not warranted where a case is dismissed on motion.

LAWFIRM further says that sanctions should be awarded because "Plaintiff's conduct warrants sanctions to defer future abuse."  (ECF No. 16, PageID.107).  Again, LAWFIRM does not provide any examples, instead simply relying on Dobronski's litigation history and the fact that he filed this case, which is an insufficient basis to award sanctions.

In sum, LAWFIRM has not demonstrated that Dobronski's lawsuit, or his litigation history, warrants Rule 11 sanctions.  Thus, the undersigned recommends that LAWFIRM's motion be denied.

    D.    Motion for Attorney Fees under 28 U.S.C. § 1927

    1.    Legal Standard

26

Sanctions are only warranted under 28 U.S.C. § 1927 when an attorney "so multiplies the proceedings in any case unreasonably and vexatiously." Or, in other words, "when an attorney objectively falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006) (internal quotation omitted). "The purpose is to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Id*.

A district court may also sanction litigants who have "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" pursuant to its "inherent powers." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991).

### 2. Discussion

Here, as with LAWFIRM's Rule 11 motion, it says that attorney fees should be awarded because Dobronski's claims are "devoid of factual and legal merit" and because Dobronski has engaged in "vexatious litigation." (ECF No. 15, PageID.95-96). However, for the same reasons that Rule 11 sanctions are not warranted, neither are attorney fees.

### V. Dobronski's Request for Sanctions

Dobronski contends that LAWFIRM should be sanctioned because it failed to comply with the local rules regarding concurrence, Rule 11's safe harbor

provision, and filed four bare-bones motions near the close of discovery that lack

merit and seek only to harass and delay the proceedings.  The undersigned agrees

that LAWFIRM's motions were not well-supported, but they fall short of

sanctionable conduct.  The better course is for the parties to move the case

forward.[3]  Given that discovery is scheduled to close on May 27, the undersigned

will entertain a request for a reasonable extension.

VI.    Conclusion

For the reasons stated above, the undersigned recommends that

LAWFIRM's motions (ECF Nos. 13, 14, 15, 16) be DENIED.

Dated: April 17, 2025                    s/Kimberly G. Altman
Detroit, Michigan                        KIMBERLY G. ALTMAN
                                         United States Magistrate Judge


**<u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>**

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

---

[3] The Court also has civility principles, which are available for viewing on the Court's website at http://www.mied.uscourts.gov/PDFFIles/08-AO-009.pdf.  Both parties would do well to be mindful of them in future filings in this case.

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 17, 2025.

s/Dru Jennings
DRU JENNINGS
Case Manager